UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 07-35-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| RANDALL THOMPSON, ET AL., | ) | **MEMORANDUM OPINION** |
| | ) | **AND** |
| Defendants. | ) | **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the Motion for Judgment of Acquittal, and Alternatively Motion for New Trial filed by the Defendant Phillip Champion. [R. 174.] The United States has filed a response in opposition [*see* R. 180], and Champion filed a reply [*see* R. 190]. For the reasons set forth below, Champion's Motion will be denied.[1]

**I.**

The four-count Indictment [R. 3] charged Champion and his three co-defendants, Randall Thompson, John "Mac" Combs, and Ronnie Adams, as agents of the local Knott County government, with several counts of criminal wrongdoing related to the distribution of county-purchased blacktop, gravel, and bridge-building materials as part of an attempt to influence the outcome of an election. The Indictment charged all four Defendants with conspiring to buy votes and misappropriate government property, in violation of 18 U.S.C. § 371. The Defendants

---

[1]Prior to sentencing the Defendant on February 2, 2009, the Court noted on the record that the Defendants' post-trial motions would be denied by subsequent writing. This Memorandum Opinion and Order articulates the Court's reasoning and analysis supporting the denial of those motions.

were also collectively charged with aiding and abetting each other in the misappropriation of government property, in violation of 18 U.S.C. § 666, while Ronnie Adams was individually charged with two separate counts of vote buying, in violation of 42 U.S.C. § 1973i(c). Essentially, the Indictment alleged that the Defendants used materials purchased by the government to improve private property and that they did this, by agreement, in exchange for votes for Randy Thompson. As to Mr. Champion, the jury acquitted him on the conspiracy count, but found him guilty on the misappropriation count. [*See* R. 167.] Champion now moves the Court for a Judgment of Acquittal, or in the alternative, a new trial.

## II.

### A.

A motion for acquittal pursuant to Fed. R. Crim. P. 29 takes the place of a motion for directed verdict and raises the question of whether the evidence is sufficient to support a verdict. *United States v. Cox*, 593 F.2d 46, 48 (6th Cir. 1979). "When reviewing a claim of insufficient evidence, we examine the evidence in the light most favorable to the government and draw all inferences in the government's favor in order to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *United States v. Johnson*, 71 F.3d 539, 542 (6th Cir. 1995) (citing *United States v. Riffe*, 28 F.3d 565, 567 (6th Cir. 1994)). There is a "strong presumption in favor of sustaining a jury conviction," *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994), and a defendant seeking a judicial reversal of a jury determination of guilt bears a "very heavy" burden "because the reviewing court does not judge the credibility of witnesses or weigh evidence, and it draws all reasonable inferences in the government's favor." *United States v. Ostrander*, 411 F.3d 684, 691 (6th Cir. 2005); *see also*

*United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir.), *cert. denied*, 512 U.S. 1243 (1994).

**1.**

Champion argues that there was insufficient evidence to convict him of aiding and abetting the misappropriation of government funds.  He contends that no evidence was presented that he intentionally misapplied, or helped or encouraged the misapplication, of public funds.  Champion further asserts that even if he did aid and abet the misappropriation, the government failed to prove that he was not acting in good faith as defined in the jury instructions.

Here, drawing all reasonable inferences in the government's favor, the Court finds that sufficient evidence exists for the jury to have found that Champion aided and abetted the misappropriation of government property beyond a reasonable doubt.  In his motion, Champion states that only eight of the government's witnesses even mentioned his name and that their combined testimony is insufficient to sustain his conviction beyond a reasonable doubt.  However, even Champion's own characterization of the relevant testimony, when taken in the light most favorable to the United States, would be sufficient to all ow the jury to find him guilty.

For example, Harold Dean Bentley, a former Knott County road foreman, testified that Champion was hired by Judge Thompson and assigned to the county garage.  Bentley claimed that Champion instructed him about which roads to work on even though Bentley was the county road foreman.  Although Bentley could not name any specific private roads that had been paved, he testified that after the election, he saw places which he believes should not have been blacktopped.  Another former county road employee, Ralph Dyer, testified that Champion never personally gave him any orders but stated that Bentley claimed to receive his orders from

3

Champion.

Other road employees testified about receiving orders from Champion. Tom Hays, a truck driver for Knott County, testified that both Champion and Bentley would give him directions about where to deliver gravel. Hays admitted that he graveled private drives but could not specifically identify any of those drives or say who told him to do so. Similarly, Paul Slone, a Knott County grader operator, testified that he received directions about where to pave from both Champion and Bentley. Like Mr. Hays, Slone could not recall specifically who told him to pave which specific roads.

Finally, Randall Gayheart, the Knott County employee chiefly responsible for building and repairing bridges, testified that Champion would give him approval to build bridges. Mr. Gayheart believed that Champion or Judge Thompson would decide which bridges to build. The government provided evidence that each of the bridges built cost approximately $5,000. Moreover, although the government's case focused on a handful of private drives that were paved, there was also evidence that almost $780,000 worth of blacktop and gravel was unaccounted for. Considering all of the evidence in the light most favorable to the government, there was sufficient evidence for the jury to find Champion guilty of aiding and abetting the misappropriation of government property.

As noted above, Champion also maintains that jury should have determined that he acted in good faith. Champion notes that he was new at his job and essentially contends that he was only following orders. In response to this argument, however, the government correctly notes that there was no testimony to support the claim that Champion was simply following orders. Thus, drawing all inferences in the government's favor, it was reasonable for the jury to

conclude that Champion was not acting in good faith.

**2.**

In his second argument, Champion contends that the admission of hearsay testimony violated his Sixth Amendment rights. Champion asserts that the tape recorded grand jury testimony of Tammy Brewer, a secretary in the Knott County Judge Executive's office, and her father, Hoey Dobson, as well as a prior tape recordings made by Detective Marcus Hopkins were inadmissible because neither Brewer nor Dobson testified at trial and no valid exception to the hearsay rule exists. He specifically argues that the statements are not admissible pursuant to the co-conspirator exception to the hearsay rule. According to Champion, the error in allowing admission of this testimony without the opportunity for cross-examination was compounded by allowing the jury to view transcripts of the recorded statements while listening to the tapes.

During the relevant investigation, Detective Hopkins interviewed both Ms. Brewer and Mr. Dobson and recorded those conversations. He questioned them about Ms. Brewer's recently paved driveway. Ms. Brewer advised Agent Hopkins that her father, Hoey Dobson, had paid for the paving and that she had a receipt to prove it. Detective Hopkins subsequently questioned Mr. Dobson, who seemed to have no knowledge about who paved the driveway or who paid for it. Testifying before the Grand Jury, Ms. Brewer essentially reiterated her prior statements. Mr. Dobson's memory improved significantly from the time he was first interviewed to when he appeared at the Grand Jury. His testimony to the Grand Jury was virtually identical to that of his daughter.

At the trial in this case, the government presented the testimony of Randy Campbell, the man who paved Ms. Brewer's driveway. Campbell testified that he did not receive payment

from either Ms. Brewer or Mr. Dobson. He also stated that he was directed to use county materials to pave that driveway and that the receipt, produced at the direction of John "Mac" Combs, was not legitimate. Based in part on the testimony of Campbell, Ms. Brewer and Mr. Dobson were convicted of perjury in a separate case prior to the trial in the instant matter. *See* London Criminal No. 6:07-cr-112-GFVT (E.D. Ky.).

Here, Champion spends a significant amount of time discussing the numerous ways in which the Court committed error by admitting the recorded statements and testimony of Ms. Brewer and Mr. Dobson under Rule 801(d)(2)(E), the coconspirator exception to the hearsay rule. Champion's argument is factually misplaced.

The Federal Rules of Evidence define hearsay as an out of court statement offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c). However, as the Court noted at trial in ruling on the Defendants' objections to the admission these statements, the out-of-court testimony at issue was not offered for its truth. In fact, the point of the government's offering Ms. Brewer's and Mr. Dobson's statements was simply to prove that those statements were made so as to establish a foundation for later showing, through other admissible evidence and testimony, that they were false. *See United States v. Hathaway*, 798 F.2d 902, 905 (6th Cir. 1986). In *Hathaway*, the Sixth Circuit concluded that:

> When statements are offered to prove the falsity of the matter asserted, there is no need to assess the credibility of the declarant. Since there is no need to assess the credibility of the declarant of a false statement, we know of no purpose which would be served by extending the definition of hearsay to cover statements offered for the falsity of the matter asserted.

*Hathaway*, 798 F.2d at 905 (citations omitted). Similarly, in *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court specifically acknowledged that the Sixth Amendment "does not

6

bar the use of testimonial statements for purposes *other than* establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59, n.9 (emphasis added) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).  Thus, when an out-of-court statement is not offered to prove the truth of the matter asserted, as with Brewer's and Dobson's statements, the Confrontation Clause is not implicated.  *See Street*, 471 U.S. at 413; *United States v. Martin*, 897 F.2d 1368, 1372 (6th Cir. 1990).

The Court further notes that the admission of these statements was not inherently prejudicial to the Defendants.  On their face, these statements did not implicate any of the Defendants in any criminal wrongdoing.  Rather, they appear to be efforts by Ms. Brewer and Mr. Dobson to escape or limit their own criminal liability.  As noted by the government, the relevance of false exculpatory statements generally relates to a consciousness of guilt.  The falsity of these particular statements, as established by the testimony of Randy Campbell, provided evidence that county-purchased materials were being used to improve private property.  Accordingly, these statements were properly admitted into evidence.

Finally, the Court finds no error in allowing the jury to use transcripts of the taped recordings as an aid.  That is a matter committed to the sound discretion of the Court.  *See United States v. Segines*, 17 F.3d 847, 854 (6th Cir. 1994).  There was no challenge to the accuracy of the transcripts.  The Defendants only objected on the grounds that the jury would place undue emphasis on the recorded statements because they also had transcripts.  Those concerns, however, were adequately addressed by a limiting instruction from the Court directing the jurors that if what they heard on the tapes differed from what they saw on the transcript, they were to rely on what they heard.  Moreover, the transcripts were only provided to the jury right

before the tapes were played and then were immediately taken up after the recordings concluded. Therefore, permitting the limited use of transcripts as an aid to the jury was not error.

**B.**

Alternatively, Champion contends that a new trial should be ordered pursuant to Fed. R. Crim. P. 33. Rule 33 of the Federal Rules of Criminal Procedure provides that "the court may vacate any judgment and grant a new trial *if the interest of justice so requires*." (emphasis added). The trial court "possesses 'wide discretion' in evaluating a Rule 33 motion and may independently evaluate witness credibility and the weight of the evidence offered at trial." *United States v. Roland*, 233 F. App'x 476, 482 (6th Cir. 2007) (citations omitted). Generally, motions for a new trial are disfavored and should be granted with caution. *See United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). Indeed, a new trial is appropriate "'only in the *extraordinary circumstances* where the evidence preponderates heavily against the verdict.'" *Roland*, 233 F. App'x at 482 (emphasis added) (citing *United States v. Ashworth*, 836 F .2d 260, 266 (6th Cir. 1988)).

Although Champion does not present any separate or additional arguments in support of ordering a new trial, the Court has reviewed Champion's prior arguments as well as the entire record. Having considered witness credibility and the weight of the evidence offered at trial, the Court, in its discretion, finds that this is not an extraordinary circumstance where the evidence preponderates heavily against the verdict. Therefore, the interest of justice does not require granting Champion a new trial.

**III.**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as

8

follows:

1.  Defendant Champion's Motion for Extension of Time to File Supplemental Motion [R. 175] is **DENIED as moot**;

2.  Defendant Champion's Motion for Judgment of Acquittal and/or New Trial [R. 174] is **DENIED**.

This the 9th day of February, 2009.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge