## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION
## PIKEVILLE

**CRIMINAL ACTION NO. 07-CR-35-3-GFVT**
**CIVIL ACTION NO. 13-cv-7327-GFVT-CJS**

**UNITED STATES OF AMERICA**                                                    **PLAINTIFF**

**v.**                         **REPORT AND RECOMMENDATION**

**PHILLIP G. CHAMPION**                                                    **DEFENDANT**

**\* \* \* \* \* \* \* \* \* \***

In June 2008, Defendant Phillip G. Champion, along with three co-Defendants, went to trial on charges stemming from allegations of conspiracy to buy votes in an election and aiding and abetting the misappropriation of county property.  Champion was convicted of one count–aiding and abetting the misappropriation of county property.  The remaining Defendants were convicted of all charges against them.  The Sixth Circuit affirmed the convictions.

Champion has since filed a *pro se* Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  (R. 396).  The United States filed a Response to the Motion.  (R. 399).  Despite being granted an extension of time to file a Reply to the United States' Response, Defendant did not file a Reply or request a further extension of time to do so.  (R. 407).  Therefore, having all relevant documents before the Court, the matter is ripe for consideration and preparation of a Report and Recommendation.  28 U.S.C. § 636(b).  For the reasons stated below, it will be **recommended** that Defendant's Motion to Vacate, Set Aside, or Correct Sentence (R. 396) be **denied**.

## I.      RELEVANT FACTS AND PROCEDURAL BACKGROUND

On November 29, 2007, a federal grand jury indicted Phillip Champion, Randall Thompson, John Combs, and Ronnie Adams with criminal wrongdoing related to the use of county-purchased blacktop, gravel, and bridge-building materials on private property.  (R. 3).  The Indictment charged Champion, the then deputy county judge executive for Knott County, Kentucky, in two of the Indictment's four counts.  Count One charged all four Defendants with conspiracy to pay persons for voting in an election held in part to elect a member of the United States House of Representatives and intentionally misapplying government property.[1]  *Id.*  Count Two charged all four defendants with aiding and abetting one another, each being an agent of local government, with intentionally misapplying government property.[2]  *Id.*  Champion initially pleaded not guilty to both counts.  (R. 15).

In June 2008, after a 10-day jury trial, a federal jury acquitted Champion on Count One of the Indictment, but found him guilty on Count Two.[3]  (R. 167).  On July 3, 2008, Champion filed a Motion for Judgment of Acquittal and, Alternatively, Motion for New Trial.  (R. 174).  The District Court denied Champion's Motion, and on February 2, 2009, sentenced Champion to an 18-month term of incarceration followed by a 3-year term of supervised release.  (R. 239; R. 244; R. 282).  The

[1]The Indictment provides that in the 2006 general election in Knott County, Kentucky, the ballot included a race to elect a member of the United States House of Representatives.  (R. 3, at 2 ¶ 7).

[2]Defendant Adams was charged in the remaining two counts of the Indictment, which related to specific incidents of vote buying.  (R. 3).

[3]The jury found Thompson, Combs, and Adams guilty on Counts One and Two.  The jury also found Adams guilty on Count Three. (R. 218, at 24-26).

Court also held Champion jointly and severally liable with his co-Defendants to pay mandatory restitution of $238,793.00.  (R. 244, at 5).

On February 12, 2009, Champion filed *pro se* a Notice of Appeal and a Motion for Leave to Appeal *In Forma Pauperis*.  (R. 252; R. 254).  He also filed *pro se* a Motion for Appointment of Counsel, seeking to have new counsel appointed to represent him on appeal.  (R. 255).[4]  On February 19, 2009, the Sixth Circuit docketed Champion's appeal, and notified him and trial counsel Thomas Jensen that despite Champion's *pro se* filing, Sixth Circuit Rule 101(a) requires counsel to continue representation on appeal until the Sixth Circuit specifically relieves him.  *See United States v. Champion*, No. 09-5190, ECF No. 1 (6th Cir. Feb. 19, 2009).  On February 26, 2009, Attorney Thomas Jensen filed in the Sixth Circuit a Motion to be Relieved as Counsel of Record, which was granted on March 12, 2009.  *Id*. at ECF Nos. 6, 18.  On March 31, 2009, the Sixth Circuit appointed Attorney Robert Jensen to represent Champion on appeal.  *Id*. at ECF No. 22.

On August 25, 2009, prior to any briefing on Champion's appeal, co-Defendant Thompson filed a Motion for New Trial Based on a *Brady/Giglio* violation.  (R. 289).  On that same date, Attorney Thomas Jensen filed on Champion's behalf a Motion to Join in the Motion for New Trial based on *Brady/Giglio* violation.  (R. 292).  On September 29, 2009, Champion's appellate counsel filed a Motion to Hold Briefing Schedule in Abeyance, explaining trial counsel had filed a Motion for New Trial in the District Court that, if granted, would render the appeal moot.  *Champion*, No. 09-5190, ECF No. 55.  On October 20, 2009, the Sixth Circuit granted the Motion and stayed the

---

[4]The documents attached to Champion's Motion indicate that despite his indication that he was proceeding *pro se*, Attorney Thomas Jensen's office assisted him with the necessary filings for appeal. (*See* R. 396-2 - 396-9).  In addition, one day before entry of his *pro se* Notice of Appeal, Attorney Thomas Jensen filed several post-judgment motions on Champion's behalf, including a Motion for Release Pending Appeal, a Motion for Order Staying Sentence of Restitution and a Joint Motion to Correct Judgment. (R. 248; R. 249; R. 250).

3

briefing schedule pending the District Court's ruling on the Motion for New Trial.  *Id*. at ECF No. 57.

On February 22, 2010, the District Court held a hearing on the pending Motion for New Trial.  (R. 324).  The minute entry for the hearing reflects Defendant Champion was present and represented by Attorney Thomas Jensen  (*Id*.).  On April 4, 2011, after permitting the parties time to supplement the record, the District Court denied Defendants' Motions for New Trial.  (R. 337). The Sixth Circuit consolidated Champion's appeal with those of his co-Defendants,[5] and on September 11, 2012, it affirmed the convictions and sentences of all Defendants.  (R. 348). Champion filed a Petition for Rehearing En Banc, which the Sixth Circuit denied on November 5, 2012.

On December 11, 2013, Champion filed the pending § 2255 Motion to Vacate, Set Aside, or Correct Sentence.  (R. 396).  Defendant's Motion presents four claims:  1) his counsel provided him with ineffective assistance by adopting a lay-low trial strategy, which he alleges resulted in counsel failing to conduct proper cross-examination, make appropriate objections, and call certain witnesses, including Champion; 2) he was denied counsel during a critical stage of the proceedings; 3) counsel committed fraud on the District Court by representing that he was Champion's retained counsel when, in fact, he had previously withdrawn; and 4) he was denied due process when he was denied the right to be heard and present his case.

---

[5]On January 12, 2012, the Sixth Circuit granted Robert Jensen's Motion to Withdraw as Counsel due to his leaving private practice, and appointed Attorney Gregory Napolitano to proceed with Champion's appeal.  *Champion*, No. 09-5190, ECF No. 106.

## II.    ANALYSIS

Under 28 U.S.C. § 2255(a), a federal prisoner may seek habeas relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a). A § 2255 motion does not have to be founded on constitutional error or even federal law. *Watt v. United States*, 162 F. App'x 486, 502-03 (6th Cir. 2006). However, to succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (*citing Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief under § 2255 for a nonconstitutional error, a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process. *See Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000), *abrogated on other grounds as recognized by Kumar v. United States*, 163 F. App'x 361 (6th Cir. 2006); *see also Hicks v. United States*, 122 F. App'x 253, 256 (6th Cir. 2005); *McNeal v. United States*, 17 F. App'x 258, 260-61 (6th Cir. 2001).

Therefore, a defendant must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (*citing Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). A defendant must prove his allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964.

5

**A.    Champion has not Established his Counsel Provided Ineffective Assistance at Trial**

Champion argues that Attorney Thomas Jensen provided ineffective assistance in adopting a lay-low trial strategy. (R. 396, at 4). Specifically, Champion argues that Attorney Jensen's strategy resulted in Jensen failing to: conduct proper cross-examination; object to improper questions; and call certain witnesses, including Champion himself. (*Id.* at 4-5). He also argues that Jensen was not focused during trial and regularly lost his train of thought. (*Id.*)

The Supreme Court has held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To meet this standard, the Court set forth a two-part test. First, a defendant is required to show that counsel's representation fell "below an objective standard of reasonableness." *Id*. at 687-88. In reviewing this prong, the lower court is to apply a deferential standard; there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. If a defendant satisfies the first prong, he must also establish that counsel's deficient performance prejudiced him. *Id*. at 691-94. Specifically, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Thus, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not affect the judgment. *Id.* at 691. Both prongs of the *Strickland* test must be met for a finding of ineffective assistance, but courts are not required to conduct an analysis under both. *Strickland*, 466

U.S. at 697.  Thus, if the Court finds that Champion cannot meet the first prong, it need not address the second.  *Id.*

In evaluating the performance prong, the Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and Champion must overcome the presumption that the challenged action "might be sound trial strategy."  *See Strickland*, 466 U.S. at 689; *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996) ("trial counsel's tactical decisions are particularly difficult to attack, and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy"), *overruled on other grounds, In re Abdur' Rahman*, 392 F.3d 174 (6th Cir. 2004)).  The *Strickland* Court cautioned that courts must take care to avoid "second-guess[ing]" strategic decisions that did not prove successful.  *Strickland*, 466 U.S. at 689.  "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness."  *Hughes v. United States*, 258 F .3d 453, 457 (6th Cir. 2001).

Here, Champion complains that his counsel adopted a strategy that they not "draw attention" to themselves, allegedly stating "[w]e want to sleep through this."  (R. 396, at 4).  He argues that as a result of this strategy counsel did not properly cross-examine the Government's witnesses, did not object to the prosecutor's improper questions and failed to call witnesses, including Champion. Champion argues that by employing this lay-low strategy, counsel failed to subject the prosecution's case against him to meaningful adversarial testing.  As explained below, a thorough review of the record reveals that Champion's counsel employed a strategy that falls within the wide range of reasonable professional assistance.

7

1.    **Champion has not established that counsel was deficient in cross-examining witnesses**

Champion argues that Attorney Jensen was unprepared, continually lost his train of thought and, as a result, conducted improper cross-examination. (R. 396, at 4). It is well established that counsel's decisions regarding cross-examination are matters of trial strategy, which are entitled to "great respect" by this Court. *Glenn v. Sowders*, 811 F.2d 605, 1986 WL 18475, at *4 (6th Cir. Dec. 8, 1986) (table decision) (*quoting United States v. Clayborne*, 509 F.2d 473, 479 (D.C. Cir.1974)); *United States v. Steele*, 727 F.2d 580, 591 (6th Cir. 1984) (holding that cross-examination "falls within the area of trial tactics and strategy that should not be subjected to second guessing and hindsight" by the court).

During his closing argument, Attorney Jensen explained to the jury his reasoning for cross-examining few witnesses:

> The prosecution, I listened to this in here about a week and a half or something, I'll hear Mr. Taylor [throw] out Phillip Champion's name, but I heard very few witnesses talk about it. I got up and asked questions when they named my client, and I think you can tell that I wasn't up on everybody. As a matter of fact, the prosecution called 30 witnesses, 28 live witnesses, and two by tape. And of those 28, 22 of them never even mentioned my client's name, period, never mentioned it. And out of the eight remaining, two of them–well, six of them were county employees at the road department that obviously knew him. We'll go through those . . . .

(R. 217, at 116). Counsel then specifically discussed for the jury the testimony of the witnesses who implicated Champion in the illegal conduct. Jensen quoted from the trial transcript and explained to the jury how the testimony did not support a finding of guilt. (*Id*. at 117-30). Attorney Jensen's closing argument demonstrates that he had deliberately chosen a lay-low strategy, that he was focused, and that he had command of the evidence.

Further, review of the transcripts of Attorney Jensen's cross-examination of those witnesses identified by Champion in his pending Motion demonstrate counsel was well prepared and asked questions to emphasize his client's lack of involvement in decisions regarding which roads/driveways to pave or gravel.   In support of his argument that counsel conducted constitutionally deficient cross-examination, Champion points to the testimony of Dean Bentley, Ralph Dyer, Paul Slone, and Tom Hays.  (R. 396, at 4-5).  But Champion's references do not support his argument.  Instead, the record demonstrates that Jensen questioned each of these witnesses on the important issues.  Specifically, he was able to emphasize that:  1) these long-term employees of the Knott County Road Department had been paving and/or graveling the same private drives for years under several different administrations; 2) none of these employees could recall being asked to pave or gravel property during Thompson's administration that the county had not been working for years; 3) citizens routinely called the department and requested gravel, a list of requests was maintained by the department's secretary, and if foreman Bentley thought they needed it, he would send the gravel; 4) Champion was new to working with the road department; 5) on occasion Champion relayed instructions from Thompson, but mostly Bentley made the decisions on what property to pave, grade or gravel; 6) Bentley directed the daily work of the 16 to 18 road department employees; 7) Champion did not give Ralph Dryer orders on what work to perform--the orders came from Bentley; 8) Ralph Dyer never heard Champion give any orders on what work to perform; 9) Ralph Dyer never heard anyone tell Bentley what work to do; 10) Champion never requested one of these employees to do any work for him personally or for his family; and 11) Champion never asked these employees to vote for Thompson. (R. 210, at 203-17; R. 212, at 68-86, 111-15, 196-99).

9

To the extent Champion argues Jensen should have clarified Slone's and Hays's testimony that "they did not know what was considered private or public," he has not established deficient performance.  First, the fact these witnesses were not certain of the distinction between public and private property was established on direct examination as well as the cross-examinations of other defense counsel who questioned the witnesses before Attorney Jensen had the opportunity.  (*See* R. 212, at 97-98, 110, 184-86, 190, 195-96).  Second, Attorney Jensen had both Slone and Hays confirm that they simply graded and/or graveled the same property they had been directed to work for decades–long before Champion started working with the road department.  (*Id*. at 113, 198). Further, contrary to Champion's argument, Attorney Jensen did ask Mr. Hays if Champion ever asked him to gravel a private drive, and Hays testified that he did not know "what's private."  (*Id*. at 113-14).  Counsel followed up this questioning and was able to get Hays to confirm that during Thompson's administration he just graveled the "[s]ame places, same old places."  (*Id*. at 113-14).

Review of counsel's cross-examination of Slone, Hays, Bentley, and Ralph Dyer does not reveal that Jensen was confused, unprepared, inattentive, or disinterested.  Instead, it demonstrated a sound strategy to try to diminish Champion's responsibility for making decisions on which roads and driveways to work.  Further, counsel established that during the relevant time period, no work was performed on roads or driveways that had not been maintained by the County for years.

Lastly, Champion argues that his counsel was ineffective in not cross-examining Randy Campbell.  (R. 396, at 4).  Champion states that "had Jensen properly cross-examined Randy Campbell . . ., it would have become obvious that Champion was physically removed from the meeting wherein Randy Campbell was hired."  (*Id.*).  Champion fails to articulate, however, why counsel's failure to elicit this testimony constitutes deficient performance.  While Campbell testified

10

that Champion was present at the meeting where Campbell was hired to perform work for the County, Campbell did not testify that there was any specific discussion at that meeting about paving private property.[6]  Nor did Campbell testify that Champion ordered him to pave or gravel any particular driveways or roads, let alone private driveways.  (R. 212, at 244-58).  In fact, the only mention of Champion during Campbell's testimony was simply that he was at the meeting where Campbell was hired to do some paving work for the County.  Campbell testified that his work for the County involved paving a lot of public roads, and thus his testimony did not specifically implicate Champion in any wrongdoing.  (R. 213, at 16, 28).  As Campbell's testimony did not implicate Champion in decisions regarding Campbell paving private driveways, Attorney Jensen's decision not to cross-examine him was reasonable.

Review of the trial transcripts demonstrates counsel's decisions regarding which witnesses to cross-examine and what areas to cover were reasonable strategic decisions that the Court must afford appropriate deference.  *See Strickland*, 466 U.S. at 690-91.  Champion has failed to demonstrate counsel performed deficiently in this regard.

### 2.    Champion has not established that counsel was deficient in his use of objections

Champion argues that as a result of the lay-low strategy, his counsel failed to make proper objections. (R. 396, at 4-5).  Determining what objections to raise at trial, however, may be sound strategy.  *See cf. United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006). ("not drawing attention to [a] statement may be perfectly sound from a tactical standpoint").  To breach the unreasonableness threshold, "defense counsel must so consistently fail to use objections, despite numerous and clear

---

[6]Further, prior to Mr. Campbell testifying, Orvil Pratt testified that there were no specific discussions at this meeting about where Mr. Campbell would be working.  (R. 212, at 210-12).

reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice." *Lundren v. Mitchell*, 440 F.3d 754, 774-75 (6th Cir. 2006).

Here, review of the trial transcript does not reveal counsel consistently failed to raise objections despite numerous and clear reasons to do so. On the first day of trial, the presiding District Judge agreed to Attorney Jensen's suggestion that the Court deem an objection by one Defendant to be an objection for all unless a Defendant states he is not joining in the objection. (R. 210, at 132). In addition, review of the trial transcripts reveals that Attorney Jensen made numerous objections during the Government's presentation of evidence, including objecting to leading questions, questions eliciting hearsay testimony, and the admissibility of certain evidence. (*See* R. 212, at 25-26, 34, 38, 41, 89, 123, 143, 178-79, 251; R. 213, at 137-38, 177, 211-15, 229-30, 238-48; R. 214, at 11-26, 60-62).

Further, Champion does not direct this Court to any specific question that he contends counsel should have lodged an objection to or provide any grounds on which his counsel should have made an objection. Instead, Champion argues that "[a] non-specific question was directed to Hays without an objection" which resulted in "an inaccurate response that sounded in truth." Champion explains that the response was true, but was not specific to the time period in controversy and thus the jury was misled to his detriment. (R. 396, at 5). However, the Court's review of Mr. Hays's direct testimony reveals that the only direct testimony of Hays that specifically related to Champion was in response to a line of questioning regarding who directed Hays to put gravel on driveways during the fall of 2006. (R. 212, at 97-100). Mr. Hays responded generally that Bentley and Champion directed him on where to take gravel. Hays also testified that on one Saturday prior to the election he was told by either Bentley or Champion that Mr. Combs was going to ride with him

12

and show him where to take gravel.  (*Id*. at 99-101).  Champion does not explain why he thinks the prosecutor's questions of Mr. Hays would have been subject to a valid objection.

In addition, counsel clarified Mr. Hays's testimony regarding Champion's involvement on cross-examination.  Counsel was able to get Mr. Hays to clarify that Bentley was the one who was "pretty much giving [Hays] orders [on] what to do."  (*Id*. at 113).  Counsel also elicited testimony from Hays that while Champion may have occasionally told Hays where to take gravel, Hays could not say that Champion directed him to gravel a private drive–Hays testified that he did not know what was considered private.  (*Id*. at 113).  Counsel was able to further emphasize that neither Bentley nor Champion ever asked Hays to gravel property that Hays had not been graveling for the past twenty years.  (*Id*.).

Similarly, to the extent Champion's brief can be read to argue counsel should have objected to the Government's "poorly worded" questions of Mr. Slone, Champion has not met his burden of demonstrating deficient performance.  Again, Champion does not direct the Court to any particular question he thinks was objectionable.  To the extent Champion thinks counsel should have objected to Slone's testimony that Bentley or Champion told him what property to grade, he does not explain why this line of questioning was objectionable.

Further, review of Slone's testimony reveals that Champion's counsel adequately addressed Slone's testimony about Champion's involvement on cross-examination.  (R. 212, at 196-99).  Attorney Jensen asked Slone whether he could identify the jobs that Champion directed him to perform from those Dean Bentley directed him to perform.  (*Id.* at 197).  When Slone testified that he could not make that distinction, Attorney Jensen emphasized the impact of this testimony by getting Slone to admit he could not remember who told him to do any particular job.  (*Id.*)  Attorney

Jensen further established that Slone could not recall grading any new property prior to the 2006 election that he had not graded in the past. (*Id.* at 198).

Moreover, even if counsel's failure to object was deficient, he cannot establish prejudice. The Sixth Circuit has recognized that because of the "'numerous potentially objectionable events' that occur throughout trial, . . . any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case . . . ." *Hodge v. Haeberlin*, 579 F.3d 627, 648-49 (6th Cir. 2009).

A thorough review of the record does not indicate that Jensen's failure to object defaulted the case or denied Champion a fair proceeding. *See Hodge*, 579 F.3d at 648. It also does not demonstrate that Jensen consistently failed to use objections, despite numerous and clear reasons for doing so. *Id.* at 648 (*citing Lundgren*, 440 F.3d at 757). To the contrary, Attorney Jensen made a tactical choice not to draw undue attention to certain testimony by lodging objections, but instead chose to address the issues on cross-examination–a reasonable strategic decision.

### 3. Champion has failed to establish counsel was deficient in failing to call witnesses

Champion also claims that Attorney Jensen rendered ineffective assistance because his lay-low strategy led him to refrain from calling rebuttal witnesses, including Champion. (R. 396, at 4-5). The only witness Champion specifically identifies, other than himself, is Chris Pratt. (*Id.*). Champion argues that "had Jensen . . . put Chris Pratt on the witness stand, it would have become obvious that Champion was physically removed from the meeting wherein Randy Campbell was hired." (*Id.*). As explained below, Champion has not met his burden of establishing deficient performance in this regard.

"[W]hether to call a witness and how to conduct a witness'[s] testimony are classic questions of trial strategy that merit *Strickland* deference." *Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012). "When a defendant claims that his attorney failed to call a witness at trial, he must '[a]t the very least . . . submit sworn affidavits from each of the individuals he has identified as uncalled witnesses stating whether they were in fact available to appear at trial and able to give testimony favorable to [the] defense.'" *United States v. Tilghman*, No. 07-cr-138-KSF, 2013 WL 4735578, at *10 (E.D. Ky. Sept. 3, 2013) (*quoting Talley v. United States*, No. 1:00-cv-74, 2006 WL 3422997, at *10 (E.D. Tenn. Nov. 27, 2006); *citing United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("Under whatever framework, however, evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.")).

Here, Champion has failed to submit an affidavit of Chris Pratt, or any other potential witnesses, in support of his claim. Thus, "the Court cannot make any real assessment of how testimony from the purported . . . witnesses would have affected the outcome of his trial." *Tilghman*, 2013 WL 4735578, at *10.

Further, even if the Court were to assume Chris Pratt would testify that Champion was not in the meeting where Campbell was hired to do blacktop-work for the County, Champion has not explained why the failure to elicit this testimony constitutes deficient performance. Neither Campbell nor Orvil Pratt, both of whom were at the meeting where Campbell was hired, testified that Champion had any involvement in the decision regarding where Campbell was to place blacktop. In addition, both Campbell and Orvil Pratt testified that there was no discussion at that

15

meeting of the specific locations where Campbell was to work.  (R. 212, at 211-12, 245-47).  Orvil Pratt testified there was no discussion of location at the meeting, and Campbell testified he was told that Mac Combs would direct him where to work.  (*Id*.).  Thus, Champion has not established that counsel was deficient in not calling Chris Pratt to testify.

Lastly, to the extent Champion argues that his counsel was ineffective because he did not allow Champion to testify, his claim lacks merit.  The Sixth Circuit "entertains a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision to testify with the client." *Hodge*, 579 F.3d at 639 *(citing United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000)).  To overcome this presumption, Champion must present record evidence that he alerted the trial court to his desire to testify.  *Id.* (*citing Webber*, 208 F.3d at 551).  Since the record does not contain such evidence, it is presumed that Champion assented to his counsel's tactical decision that he not testify.  *See id.*  "This assent is presumed because the defendant's attorney is 'strongly presumed to have rendered adequate assistance' in carrying out the general duty 'to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution.'"  *Garner v. United States*, Nos. 1:09-cv-2314, 1:04-cr-44, 2011 WL 1630128, at **6-7 (N.D. Ohio Apr. 29, 2011) (*citing Webber,* 208 F.3d at 550).  Accordingly, as Champion has not offered any evidence to rebut the presumption that he assented to counsel's advice not to testify and his counsel is presumed to have rendered adequate assistance in this regard, he has failed to meet his burden of establishing deficient performance.  *Id*.

Thus, a review of the record does not demonstrate that Champion's counsel performed below the highly deferential *Strickland* standard.  Rather, it shows that Champion's counsel had deliberately

16

chosen a lay-low strategy to emphasize the limited nature of his client's involvement in the prosecutor's narrative and to avoid drawing unnecessary attention to his client.  In fact, Champion was the only Defendant acquitted of the conspiracy count, which indicates counsel's strategy was at least somewhat successful.  Review of the trial transcript further demonstrated that counsel understood the issues and had command of the evidence.  Counsel's trial strategy was reasonable and one the Court must give great deference.  *Strickland*, 466 U.S. at 688-90.  Accordingly, Champion has not established the deficient performance prong of *Strickland*, and the Court need not proceed to discuss the prejudice prong.

### B.    Champion Was Not Denied Counsel at a Critical Stage

Champion argues that he was denied counsel at a critical stage in the proceedings, and thus his conviction must be overturned.  (R. 396, at 5-7).  In support of his argument, Champion cites to *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984).  In *Cronic*, the Supreme Court noted it "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."  *Id*. (citations omitted).  Thus, if Champion can establish he was denied counsel during a critical stage of his proceedings, it is deemed to be a per se denial of his right to the effective assistance of counsel.  *Id*.  The Supreme Court has explained that a "critical stage" is one that "held significant consequences for the accused."  *Bell v. Cone*, 535 U.S. 685, 696 (2002).  As explained below, Champion has not established he was denied counsel at a critical stage of his proceedings.

While Champion's specific argument in this regard is difficult to decipher, he refers to a six-month period between February 9, 2009, the date the District Court entered its Order explaining its denial of Champion's Motion for Judgment of Acquittal, and August 25, 2009, the date Thomas

Jensen filed a Motion to Join in Thompson's Motion for New Trial.  (R. 396, at 6-7).  During this time period, Champion alleges that his trial counsel, Thomas Jensen, withdrew from his case, and the Sixth Circuit appointed Robert Jensen to represent him on appeal.  To the extent Champion is asserting he did not have counsel between the time Thomas Jensen withdrew from his case and the Sixth Circuit appointed new counsel, this was not a critical stage.

Instead, the record reflects, that on February 19, 2009, the Sixth Circuit notified Champion and Attorney Thomas Jensen that despite Champion's *pro se* filing, Sixth Circuit Rule 101(a) requires counsel to continue representation on appeal until the Sixth Circuit specifically relieves him. *Champion*, No. 09-5190, ECF No. 1 (6th Cir.).  On February 26, 2009, Attorney Thomas Jensen filed in the Sixth Circuit a Motion to be Relieved as Counsel of Record, which was granted on March 12, 2009.  *Id*. at ECF Nos. 6, 18.  On March 31, 2009, the Sixth Circuit, appointed Attorney Robert Jensen to represent Champion on appeal.  *Id*. at ECF No. 22.  There is no entry in the dockets of either the Sixth Circuit or the District Court between March 12, 2009, and March 31, 2009, other than the District Court's notation of Defendants' appellate case numbers.[7]  Thus, Champion has not established that anything occurred during this time period that "held significant consequences" for him.

To the extent Champion is arguing he was denied counsel during the time when his appeal was pending and Thomas Jensen's filing of the Motion to Join co-Defendant Thompson's Motion for New Trial, he has not established he was without counsel.  Champion argues that upon learning that a co-Defendant was working on a motion for a new trial based upon a possible *Brady/Giglio*

---

[7]On March 13, 2009, the Clerk of Court did enter a CJA 20 Form as to Jason Williams, Ronnie Adam's counsel.  (R. 278).  This filing, however, is of no import to Champion.

violation, he contacted appellate counsel to obtain help in joining the motion. Champion attaches to his § 2255 Motion evidence that he emailed Robert Jensen on August 5, 2009, with questions regarding joining a co-Defendant's Motion for New Trial. (R. 396-10). Robert Jensen responded that he was only appointed to represent Champion on appeal and could not advise him on the trial motion. (*Id*.). Robert Jensen suggested Champion retain counsel to represent him on the matter in the District Court. (*Id*.). The record reflects that trial counsel, Thomas Jensen, stepped back into the case to represent Champion in the trial court on the post-trial motion.

Specifically, on August 25, 2009, co-Defendant Thompson filed a Motion for New Trial based on a *Brady/Giglio* violation, alleging the Government failed to timely disclose grants of immunity to over twenty witnesses. (R. 289). On that same date, Champion's trial counsel, Thomas Jensen, filed a Motion seeking to join in co-Defendant Thompson's Motion. (R. 292). Champion argues that trial counsel filed this Motion without talking to him, without his permission, and during a time when he was no longer counsel of record.[8]

On December 21, 2009, the District Court held a telephonic conference on the pending Motions for New Trial, and set the matter for a February 22, 2010, hearing. The minute entry from this phone conference indicates that Champion was represented during the call by both Robert Jensen, appellate counsel, and Thomas Jensen, trial counsel. (R. 310).

On February 22, 2010, the District Court held a hearing on the pending Motions for New Trial. (R. 324). Of note, the hearing was held six months after Thomas Jensen filed the Motion to

---

[8]On September 29, 2009, Champion's appellate counsel filed a Motion to Hold Briefing Schedule in Abeyance in the Sixth Circuit, explaining trial counsel had filed a Motion for New Trial in the District Court that, if granted, would render the appeal moot. *Champion*, No. 09-5190, ECF No. 55. On October 20, 2009, the Sixth Circuit granted the Motion and stayed the briefing schedule pending the District Court's ruling on the Motions for New Trial. *Id*. at ECF No. 57.

Join co-Defendant Thompson's Motion for New Trial.  During those six months, Champion did not make any filing to alert the Court that he did not approve of Thomas Jensen representing him on the Motion.  Nor did Champion have new counsel enter an appearance on his behalf.  Instead, Champion appeared at the hearing, observed Thomas Jensen enter his appearance on his behalf, and did not make any effort to alert the Court that Jensen was appearing without his consent.

Champion further argues that he was denied the right to confer with counsel because Thomas Jensen did not discuss the Motion with him before the evidentiary hearing.  Champion does not point to any evidence to suggest he tried to consult with Thomas Jensen regarding this Motion to no avail, or that Jensen was without critical information.  Review of the Motion filings and hearing transcript evidence that Jensen, as trial counsel, was familiar with the facts of the case and resumed his representation of Champion when activity reopened matters in the trial court.  (R. 308, 323).  It appears that Champion is arguing that because he did not specifically consent for Thomas Jensen to resume his representation of him in the trial court and Jensen did not discuss the Motion with Champion, his representation was improper or inadequate.  Champion's argument lacks merit.

In support of his argument, Champion cites to cases that are distinguishable.  In *Powell v. Alabama*, 287 U.S. 45, 57 (1932), the trial court did not formally appointment counsel until the morning of trial and counsel had no opportunity to prepare or investigate.  Nor did it appear defendants had any meaningful access to counsel pretrial.  The Supreme Court held under the circumstances, "defendants were not accorded the right to counsel in any substantial sense."

Here, on the other hand, Thomas Jensen represented Champion at trial and was well versed in the facts of the case when he filed the Motion to Join co-Defendant Thompson's Motion for New Trial and appeared on his behalf at the hearing on the Motion.  This is not a situation where a

20

defendant is represented by an attorney who had no opportunity to prepare a defense. In addition, the issues raised at the hearing on the Motion for New Trial were not unique to Champion, and Thompson's attorney, having filed the original Motion, took the lead for the Defendants. (R. 328). As needed, other defense counsel asked follow-up questions of the witnesses, including Attorney Jensen who participated in the questioning of Officer Hopkins. (R. 328, at 75). Thus, Champion was represented at the hearing by counsel who was knowledgeable about the facts of the case and was prepared on the issue before the Court. Champion's reliance on *Powell* is not on point.

Similarly, Champion's citation to *Geders v. United States*, 425 U.S. 80, 91 (1976), is also unavailing. There, the Supreme Court held that a trial court's order that a defendant not consult with his attorney "about anything" during an overnight recess of the trial deprived him of his right to the assistance of counsel. Here, Champion was represented by counsel at all critical stages, and was not prevented from conferring with his counsel. In fact, at the close of the hearing on the Motion for New Trial, the District Court gave the parties thirty days to supplement the record with additional materials before it would adjudicate the Motion. (R. 323; R. 324). Again, Champion made no filing during this time period noting his concern that Thomas Jensen was not authorized to represent him. Nor does Champion assert he attempted to confer with Attorney Jensen after the hearing but was denied the opportunity or prevented from doing so. Champion had well-informed counsel at every stage of his proceedings, and he has not established that he was prevented from consulting with him. As such, he has not established he was denied counsel at a critical stage.

### C.    Champion Has Not Established Counsel Committed Fraud on the Court

Champion argues that his counsel committed fraud on the court by representing to the District Court at the February 22, 2010, hearing on the Motion for New Trial that he was Champion's

21

retained counsel when, in fact, he had previously withdrawn.[9]  As explained below, the record does not support Champion's claim that counsel committed fraud on the Court.

The Sixth Circuit has "[d]efined fraud on the court as conduct:  (1) on the part of an officer of the court; that (2) is directed to the judicial machinery itself; (3) is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; (4) is a positive averment or a concealment when one is under a duty to disclose; and (5) deceives the court."  *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009) (*citing Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993)).  Even if the Court assumes that the first and second elements are met, Champion's claim falls short.

Champion argues that Attorney Thomas Jensen misrepresented to the Court his status as "retained" counsel at the hearing on the Motion for New Trial.  But there was nothing untruthful or deceptive about Attorney Jensen re-entering the case.  As discussed above, Thomas Jensen was Champion's trial counsel.  Although he had withdrawn as counsel for purposes of appeal, Jensen resumed his role as trial counsel when activity occurred before the trial court.  Notably, at the time Jensen entered his appearance at the hearing, Champion sat quietly without any effort to notify the Court that he did not want Attorney Jensen representing him on the Motion.[10]  Further, he does not allege that he told Attorney Jensen he did not want his representation.  There is no evidence that

---

[9]Champion did not raise this claim as one of ineffective assistance of counsel.  And while he appealed the District Court's ruling to deny the Motion for New Trial based on an alleged *Brady/Giglio* violation, he did not raise the issue of whether counsel committed fraud on the Court by representing Champion on the Motion.  (*See* R. 348).  However, because the Court finds the claim lacks merit and the Government did not raise the issue, it will not consider whether Champion defaulted this claim by failing to raise it on direct appeal.

[10]As noted above, the hearing occurred almost six months after Jensen filed the Motion to Join co-Defendant Thompson's Motion for New Trial.  Champion had ample opportunity to notify Jensen and/or the Court if he did not want Jensen representing him on the Motion.

Jensen's conduct was intentionally false, willfully blind to the truth, or is in reckless disregard for the truth.

Instead, Jensen's conduct was commendable.  Jensen knew appellate counsel was not appointed to represent Champion in the District Court, and thus took it upon himself as trial counsel, apparently without additional remuneration, to continue with Champion's representation.  The fact Champion never attempted to alert the Court that Jensen was not authorized to represent him on the Motion evidences that Champion acquiesced in counsel's representation.  Champion has failed to establish Attorney Thomas Jensen's representation of him on the Motion for New Trial constituted fraud on the Court.

### D.    Champion Has Not Established He Was Denied an Opportunity to be Heard

Champion alleges that he was denied due process because he did not have a meaningful opportunity to be heard and present his case.[11]  While Champion recites the black-letter law on the due process rights of an accused, he has failed to set forth any facts to support his argument that he was denied due process.  (R. 396, at 8).  Champion having failed to set forth any factual basis for his claim, the Court is not required to make his argument for him.  *See Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (explaining that where "claims are stated in the form of conclusions without any allegations of facts in support thereof," a § 2255 motion is "legally insufficient to sustain review"); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) (stating that "[c]onclusions, not substantiated by allegations of fact with some probability of veracity, are not sufficient to warrant a hearing," must less relief); *accord United States v. Roach*, 502 F.3d 425, 442 (6th Cir. 2007)

---

[11]Champion also failed to raise on direct appeal his claim that he was denied due process. Nevertheless, as the Court finds this claim lacks merit, it will not consider the issue of whether the claim is procedurally barred.

(deeming undeveloped claims unreviewable) (*citing United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")).

Nevertheless, review of the record establishes that Champion was provided due process in this matter. Specifically, Champion had a 10-day jury trial, wherein he had the opportunity to examine the evidence against him, present evidence on his own behalf and cross-examine witnesses presented by the Government. (*See* R. 211 - R. 217). The District Court also held a post-judgment hearing on Defendants' Motions for New Trial, wherein the Defendants had the opportunity to present evidence challenging the Government's conduct with respect to certain claimed constitutional violations. (*See* R. 323). Defendant also challenged both his conviction and the District Court's denial of his Motion for New Trial on appeal. (*See* R. 348). Accordingly, Champion has not established a viable claim that he was denied due process.

### E.      An Evidentiary Hearing Is Not Required

Section 2255 requires that a district court hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Further, no hearing is necessary where "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (*quoting Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir.1999)). In the present case, an evidentiary hearing is not required because the record conclusively shows that Champion is not entitled to relief.

## III.   CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant on his § 2255 claims.  A certificate may issue only if he has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under § 2255).  In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*.  In cases where a district court has rejected a petitioner's constitutional claims on procedural grounds without reaching the merits, a COA should issue "when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

In this case, reasonable jurists would not debate the denial of Defendant's § 2255 claims or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack*, 529 U.S. at 484).  Accordingly, the undersigned recommends denying a certificate of appealability on Defendant's § 2255 claims upon the District Judge's entry of his final order in this matter.

25

## IV.    CONCLUSION AND RECOMMENDATIONS

Accordingly, the Court being sufficiently advised, for the reasons stated herein,

**IT IS RECOMMENDED** that:

(1)    Defendant Phillip Champion's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to § 2255 (R. 396) be **denied;**

(2)    a Certificate of Appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter;

(3)    Judgment in favor of the United States be **entered** contemporaneously with the District Court's entry of its final order; and

(4)    this action be **stricken** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute.  *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b).  Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 31st day of December, 2015.



**Signed By:**

*Candace J. Smith*

**United States Magistrate Judge**

I:\DATA\habeas petitions\2255 R&R general\07-35 R&R Champion.final.wpd